UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION


MICHELLE GOEBERT,

                    Plaintiff,


vs.                                Case No.  2:04-cv-505-FtM-29DNF



LEE COUNTY, a political subdivision
of the State of Florida, LEE COUNTY
SHERIFF'S   OFFICE,   MIKE   SCOTT,
individually and as Sheriff of Lee
County,   THOMAS   P.   WEAVER,
individually and as Captain of Lee
County  Sheriff's  Office,  PRISON
HEALTH SERVICES, INC., a foreign
corporation, EMSA CORRECTIONAL CARE,
INC., a Florida corporation, DAVID
F. BROWN, M.D., an individual,
SANDEE   MALANOSKI,   R.N.,   an
individual,

                    Defendants.
_____/

**OPINION AND ORDER**

        This matter comes before the Court on two motions for summary

judgment: (1) defendants Mike Scott (the Sheriff) and Thomas

Weaver's ("Captain Weaver") Motion for Summary Judgment (Doc. #83-

1), filed on August 9, 2005, and (2) Prison Health Services, Inc.

("PHS"), EMSA Correctional Care, Inc. ("EMSA"), and David F. Brown,

M.D.'s ("Dr. Brown")(collectively "the medical defendants[1]") Motion

_____

        [1]Sandee Malanoski, RN, is also a Defendant. However, it
appears Ms. Malanoski has never been served, and the time to do so
                                                    (continued...)

for Summary Judgment (Doc. #93-1), filed on September 19, 2005.
Plaintiff filed her responses (Docs. #96-1 and #100-1) on September
19 and 28, 2005 respectively.  All parties have filed numerous
documents as attachments in support of their respective positions.
The Sheriff and Captain Weaver filed a supplemental authority with
attachments (Doc. #90) and a Response (Doc. #103) to plaintiff's
Motion to Dismiss/Strike (Doc. #96-1).[2]

**I.**

Summary judgment is appropriate only when the Court is
satisfied that "there is no genuine issue at to any material fact
and that the moving party is entitled to judgment as a matter of
law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" if there is
sufficient evidence such that a reasonable jury could return a
verdict for either party.  Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248 (1986).  A fact is "material" if it may affect the
outcome of the suit under governing law.  Id.  The moving party
bears the burden of identifying those portions of the pleadings,
depositions, answers to interrogatories, admissions, and/or
affidavits which it believes demonstrate the absence of a genuine
issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317,

---

[1](...continued)
has expired. Fed. R. Civ. P. 4 (m).

[2]Plaintiff camouflages a Motion to Dismiss/Strike in the body
of her Response (Doc. #96-1) to defendant's summary judgment
motion.  The Court finds that this motion is without merit.

323 (1986); <u>Hickson Corp. v. Northern Crossarm Co., Inc.</u>, 357 F.3d 1256, 1259-60 (11th Cir. 2004).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial motion. <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 322; <u>Hilburn v. Murata Elecs. N.Am., Inc.</u>, 181 F.3d 1220, 1225 (11th Cir. 1999). In ruling on a motion for summary judgment, if there is a conflict in the evidence the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. <u>Shotz v. City of Plantation, Fl.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003).

## II.

This case arises from the miscarriage of plaintiff's unborn baby while plaintiff was incarcerated in the Lee County Jail. Viewed in the light most favorable to plaintiff, the summary judgment facts are as follows: Ms. Goebert entered the Lee County Jail on October 19, 2001, on a charge of DUI manslaughter.[3] Plaintiff was seen by jail medical personnel upon her admission,

---

[3]Plaintiff pled nolo contendere on April 28, 2003, and was transferred to the custody of the Department of Corrections on May 28, 2003.

and told them she was four months pregnant, she had a history of
two prior miscarriages, and she was a high risk pregnancy due to
her age (38   years old) and her R.H. negative blood type.
Plaintiff was placed on prenatal vitamins (which she received) by
the jail physician.  (Doc. #98, pp. 32-33, 38).

Ms. Goebert wrote an Inmate Medical Request Form dated October
21, 2001, stating: "I just wanted to inform that I am pregnant.  I
had an ultra sound Oct. 1/01".  The "Staff" portion of the form
noted that plaintiff stated she was approximately four months
pregnant, and referred plaintiff for a doctor visit.  An October
24, 2001 Diet Order Form ordered extra milk due to the pregnancy.
On October 25, 2001, plaintiff wrote a "To whom it may concern"
letter requesting a copy of her medical records from her
incarceration in Canada just prior to her extradition to Florida.
Also on October 25, 2001, Dr. Brown signed an Outpatient Referral
Request Form for a prenatal office visit.  This was approved
effective October 31, 2001, and plaintiff had an outpatient
obstetrical consultation and prenatal visit, which included a pap
smear and other testing, on November 14, 2001 by the Lee Physicians
Group.  No problems were reported.

November 19, 2001, was the first time plaintiff thought she
had an actual problem with her pregnancy.  Ms. Goebert awoke to
find that she was leaking fluid, which she suspected to be amniotic
fluid.  (Doc. #98 at p. 41).  She informed a nurse of the leakage
and saw Dr. Brown later that morning.  (Id. at 41-42).  Plaintiff

-4-

informed Dr. Brown that she was "leaking fluids;" she had her blood pressure taken, and an ultrasound was ordered. (Id at p. 42). The ultrasound technician and then Dr. Brown stated that the ultrasound showed no diminishment of amniotic fluid at that time. (Id. at pp. 42-46).

Plaintiff testified that on a daily basis between November 20 and 28th she requested medical attention, verbally or in writing, due to her belief and concern that she was losing amniotic fluid. She also informed the nurses that came to her unit every morning that she believed her condition was worsening. (Id at p. 47). However, "some days they refused to take requests . .. .. And Nurse Dawn took the request and threw it back at [her]⁴." (Id).

On the evening of November 28, 2001, Ms. Goebert filled out an Inmate Medical Request Form stating: "I am 5 months pregnant & have been leaking a yellowish fluid since Sat. Nov. 24/01. Since then I have been soaking a sanitary pad overnight. I have been informing Medical Staff of this since then & no one seems concerned. I would like to see a Doctor, ASAP." The "Staff" portion of the form noted plaintiff's symptoms, and placed her on sick call for the next day.

---

⁴Ms. Goebert stated that she did not think to keep the written requests and that they wouldn't take forms from her or give her forms, and "they would say "you're wasting our time. We are aware of this problem." (Id).

Also on the evening of November 28, 2001, plaintiff completed a request slip addressed to the Facility Commander.  In the form plaintiff stated:

> I am 5 months pregnant & began leaking fluid on Nov. 19th.  I was given an ultrasound that day & seen by the jail doctor the following day, who told me I would be seen by an outside dr., which I have not.  I have continued leaking fluids, soaked a maxi-pad a day since Sat. Nov. 24th when it became worse.  I have notified medical staff on a daily basis since then, but they seem unconcerned.  I NEED to be seen by an obstetrician, <u>not</u> the jail doctor.  I lost a child last year at 5 months when my water broke early & <u>NEED</u> a doctor to let me know if everything is OK.  I have not felt the baby move in a few days.

Captain Weaver, the Facility Commander for the Community Programs Unit, believes he received this document on November 29, 2001, and wrote the following reply: "Medical can set this up at your expense if you desire."

On November 29, Ms. Goebert told a nurse that she couldn't feel her baby kicking; that she feared the baby was dead; that she was still leaking fluids; and that she was not getting any assistance.  (Doc. #98, p.54).  Plaintiff completed an Inmate Medical Request Form stating: "I submitted a medical form yesterday to inform I have been leaking fluid <u>steadily</u> since Nov 24th (I'm 5 mths pregnant).  I was told I would see the Dr. Today, now my app't has been cancelled.  I have not felt the baby move in days.  I have been requesting to see a Dr. since Nov. 24th."  Plaintiff was seen by Dr. Brown that day, and a Doppler examination found normal fetal

heart sounds.  Dr. Brown found that plaintiff was having normal baby activity and referred her for a follow-up obstetrics visit.

On November 30, Ms. Goebert again told a nurse she was leaking.  Later on November 30, Ms. Goebert had an incident involving substantial leakage and was taken to the hospital.  (Doc. #98, pp. 55-56).  She was in the hospital neonatal intensive care unit from November 30th through December 3rd.  On December 3, 2001 Ms. Goebert's unborn baby died.  Plaintiff stated that her treating physician informed her that if she had been brought to the hospital without the eleven day delay between the time she first recognized the need for medical attention and the time she was actually admitted, her unborn baby could have been saved.  (Doc. #100-3, p.2).

Plaintiff filed an eight count Second Amended Complaint (Doc. #52)[5], seven of which allege violations of her Eight Amendment right against cruel and unusual punishment pursuant to 42 U.S.C. § 1983[6] and one of which alleges a state law claim of negligence.

---

[5]There are two Count VIs in the Second Amended Complaint.

[6]The Eighth Amendment prohibitions against cruel and unusual punishment do not apply to pretrial detainees such as Ms. Goebert. Snow ex rel. Snow v. City of Citronelle, Al., 420 F.3d 1262, 1268 (11th Cir. 2005).  The causes of action actually arise under the Fourteenth Amendment Due Process Clause.  Id.  The standards, however, are the same as under the Eighth Amendment.  Bozeman v. Orum, 422 F.3d 1265, 1272 n.13 (11th Cir. 2005); Cook v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1115 (11th Cir. 2005).

**III.**

The medical defendants, the Sheriff, and Captain Weaver contend that the § 1983 claims are barred because Goebert did not comply with the exhaustion requirement of the Prison Litigation Reform Act. (Docs. #93-1, p. 16; #83-1, p. 6). The Court agrees.

The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust administrative remedies prior to filing a federal civil rights action. The pertinent portion of the PLRA provides:

> (a) No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). This requirement applies to all prisoner suits filed after April 26, 1996. Chandler v. Crosby, 379 F.3d 1278, 1286 (11th Cir. 2003); Higginbottom v. Carter, 223 F.3d 1259 (11th Cir. 2000). The Supreme Court has determined that this exhaustion requirement applies to virtually all federal claims brought by prisoners. Porter v. Nussle, 534 U.S. 516, 532 (2002) held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they involve excessive force or some other wrong doing." The exhaustion requirement is mandatory, and cannot be waived, even when the process is futile or inadequate. Booth v. Churner, 532 U.S. 731, 741 (2001) (finding that Congress has mandated exhaustion of administrative remedies,

regardless of whether the relief offered through the administrative procedures is adequate to satisfy the claim).  See also Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998)("Congress now has mandated exhaustion in section 1997e(a) and there is no longer discretion to waive the exhaustion requirement.").  "A District court must dismiss the suit when it finds that the plaintiff-inmate has not exhausted his administrative remedies." Chandler, 379 F.3d at 1286.  In determining whether a plaintiff has exhausted her administrative remedies, a court does "not review the effectiveness of those remedies, but rather whether remedies were available and exhausted." Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999) (citing Alexander, 159 F.3d 1326).  See also Brown v. Sikes, 212 F.3d 1205, 1208 (11th Cir. 2000).

Plaintiff first argues that because the Sheriff and Captain Weaver filed answers to the Second Amended Complaint without filing a motion to dismiss, these defendants cannot raise the exhaustion issue on summary judgment.  (Doc. #96, p. 4).[7]  Plaintiff is incorrect.  While the Eleventh Circuit has not decided whether exhaustion under the PLRA is a jurisdictional matter, it has noted that most circuits have found that exhaustion is not jurisdictional.  Chandler, 379 F.3d at 1286 n.16.  If exhaustion is

---

[7]The medical defendants did file a motion to dismiss which included an issue of the failure to exhaust, but this was denied because the record did not reflect the jail administrative procedures at that point in time.  Their Answer (Doc. #81) did raise exhaustion as an affirmative defense.

jurisdictional, a jurisdictional issue can be raised at anytime. Fed. R. Civ. P. 12(h)(3). If exhaustion is not jurisdictional, it is not one of the issues which must be raised in a motion to dismiss. Fed.R.Civ.P. 12(h)(1). Additionally, the Court will consider this affirmative defense because plaintiff suffers no prejudice from the failure to include it in the Answer, <u>Miranda de Villalba v. Coutts & Co. (USA) Intern.</u>, 250 F.3d 1351, 1353 (11th Cir. 2001), and because inclusion in the Joint Pretrial Statement (Doc. #118-1, pp. 5-6) cures any defect. <u>Pulliam v. Tallapoosa County Jail</u>, 185 F.3d 1182, 1185 (11th Cir. 1999).

There is no dispute that plaintiff was "a prisoner confined in any jail, prison, or other correctional facility" within the meaning of the PLRA. <u>See</u> 42 U.S.C. § 1997e(h). Plaintiff was a pretrial detainee in the Lee County Jail on a criminal charge of DUI manslaughter during the events at issue in this case.

Plaintiff argues that her § 1983 claims are not "brought with respect to prison conditions." (Doc. #96, p. 4). Plaintiff is incorrect. Section 1983 claims alleging deliberate indifference to a serious medical need are clearly claims about "prison conditions." <u>Booth</u>, 532 U.S. at 734, 741 (PLRA applied to claim of inadequate medical care); <u>Harper</u>, 179 F.3d at 1311 (claim of refusing adequate medical care is within scope of the PLRA).

Plaintiff also asserts that administrative remedies were not "available" within the meaning of the PLRA. (Doc. #96, pp. 4-5). This is also incorrect. Administrative procedures are "available"

within the meaning of the PLRA if there is "the possibility of some relief for the action complained of." <u>Booth</u>, 532 U.S. at 738-39; <u>Johnson</u>, 418 F.3d at 155-56.  A prisoner must file a grievance and exhaust the grievance process where such a grievance procedure is provided.  <u>Brown v. Sikes</u>, 212 F.3d 1205, 1207 (11th Cir. 2000); <u>Alexander</u>, 159 F.3d at 1325-26; <u>Pri-Har v. Corrections Corp. Of America, Inc.</u>, 2005 WL 3087891 (11th Cir. 2005).  Plaintiff complains about her medical care from November 19 through November 30, when she was taken to the hospital.  Defendants have established that there were administrative remedies available in the jail at the time of the relevant events, and have submitted a copy of the Inmate Grievance Procedure.  (Doc. #93-5).

Plaintiff also argues that administrative remedies were not "available" because plaintiff seeks money damages, which are not available under the Lee County Jail grievance procedures. Plaintiff cites a Ninth Circuit and a Tenth Circuit case, (Doc. #100-1, p. 12), both of which pre-date the Supreme Court's rejection of this argument, <u>Booth</u>, 532 U.S. at 741; <u>Porter</u>, 534 U.S. at 523, and fails to cite the Eleventh Circuit cases rejecting the argument, e.g. <u>Higginbottom</u>, 223 F.3d at 1260.

Plaintiff argues that the grievance procedure did not apply to her because (1) she was not provided with the Inmate Handbook when she entered the Lee County Jail, (2) she was repeatedly told that the jail was out of Grievance Forms or that the jail personnel were already aware of her problem, and (3) jail personnel wrongly

instructed her that she was responsible for contacting the proper medical care provider and paying for any outside medical care. (Doc. #96-1, p. 5).  None of these factors render the statutory requirement inapplicable to plaintiff.  Plaintiff conceded in deposition that she was familiar with a grievance form (Doc. # 98, pp. 49-50), and the record is undisputed that she never filed a grievance.

Finally, plaintiff argues that she did exhaust the administrative procedures.  (Doc. #96, p. 5; Doc. #109, pp. 10-12). The record does not support this contention.  The Grievance Procedure strongly encourages informal resolution of a complaint. If this is not satisfactory, an inmate must use the formal grievance process.  This requires the inmate for forward a request slip to the Shift Commander, who investigates and forwards the result to the Facility Commander.  The Facility Commander determines if the grievance is legitimate; if it is legitimate, it is forwarded to the Grievance Committee Chairman, who schedules it for a hearing at the next available hearing date.  The Hearing Commission makes a recommendation, and the Facility Commander approves, denies, or modifies the recommendation.  In an emergency, the reply must be made within 48 hours.  If the inmate is dissatisfied, an appeal to the Detention Bureau Commander is required within five days of receipt of the decision.

Ms. Goebert asserts that she initially complained informally, and then on November 29 addressed a request slip to the Facility

Commander (Captain Weaver) as required under Inmate Grievance Procedure. (Id at p. 10). Captain Weaver returned the form to Ms. Goebert, responding that obstetric care could be set up at her expense if she desired. (Doc. #100-1, p. 11, Doc. #100-9).

Assuming the Court construes this request form as a proper grievance even though it by-passed the Shift Commander, Ms. Goebert had to file an appeal with the Detention Bureau Commander within five days of receiving Captain Weaver's response. (Doc. #93-5, p. 3). Ms. Goebert received Captain Weaver's reply when she returned from the hospital on December 5, 2001, and thus should have filed her appeal by December 10, 2001. It is undisputed that she failed to do so.

Plaintiff argues that due to the emergency nature of the grievance that Captain Weaver's response was late under the grievance procedures; that a hearing should have been scheduled and wasn't; and that Captain Weaver's noncompliance with his own rules and the death of her baby precluded her from proceeding further with the appropriate grievance procedures. (Id). Since plaintiff received a response after she returned form the hospital, nothing prevented her compliance with the grievance procedure.

Ms. Goebert failed to fully pursue her administrative remedies. Under the PLRA, she had to file an appeal regardless of whether the relief offered through the administrative procedures was adequate. Booth, 532 U.S. at 741. Since plaintiff's failure to comply with the PLRA is a complete bar to her federal claims,

-13-

the Court is compelled by the PLRA to grant a summary judgment of dismissal as to all defendants as to the § 1983 claims.

In the alternative, the Court will address the other issues raised by defendants in their motions.

## IV.

The applicable Fourteenth Amendment legal standards are well-established. "An officer violates a detainee's Fourteenth Amendment right to due process if he acts with deliberate indifference to the serious medical needs of the detainee." Crosby v. Monroe County, 394 F.3d 1328, 1335 (11th Cir. 2004)(quoting Lancaster, 116 F.3d 1419, 1425 (11th Cir. 1997). To show deliberate indifference to a serious medical need, plaintiff must establish both an objective and a subjective prong: Plaintiff must first prove an objectively serious medical need, then she must prove that the jail official acted with an attitude of deliberate indifference to that need. Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004); Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). A "serious medical need" is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention, and, in either case, must be one that if left unattended poses a substantial risk of serious harm. Brown, 387 F.3d at 1351; Farrow, 320 F.3d at 1243. To establish "deliberate indifference," plaintiff must prove (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by

-14-

conduct that is more than mere negligence.  <u>Cook v. Sheriff of Monroe Cty. Fl.</u>, 402 F.3d 1092, 1115 (11th Cir. 2005); <u>Brown</u>, 387 F.3d at 1351; <u>Farrow</u>, 320 F.3d at 1245.  Inadvertent or negligent failure to provide adequate medical care does not rise to a constitutional violation.  <u>Farrow</u>, 320 F.3d at 1243.  Delay of treatment for obviously serious conditions can rise to the level of deliberate indifference where it is apparent that delay would detrimentally exacerbate the medical problem, the delay does seriously exacerbate the medical problem, and the delay is medically unjustified.  <u>Taylor</u>, 221 F.3d at 1259-60 (citing <u>Hill v. Dekalb Reg'l Youth Ct.</u>, 40 F.3d 1176, 1187 (11th Cir. 1994)); <u>Lancaster</u>, 116 F.3d at 1425.

## V.

Captain Weaver argues that the official capacity portion of the claim (Count V) against him should be denied because the Sheriff is a named defendant and any official capacity claim against Captain Weaver is simply redundant of the claim against the Sheriff.  (Doc. #83, pp. 8-9).  It is well settled that an official capacity suit is essentially a suit against the entity, and is due to be denied as redundant where the entity or its representative is a party to the suit.  <u>Cooper v. Dillon</u>, 403 F.3d 1208, 1221 n.8 (11th Cir. 2005); <u>Busby v. City of Orlando</u>, 931 F.2d 764, 776 (11th Cir. 1991).  Plaintiff's only argument is that defendant Weaver waived the issue for summary judgment purposes because he did not file a motion to dismiss on this ground.  (Doc. #96-1, p. 6).  This

is not, however, an issue which must be raised in a motion to dismiss, Fed. R. Civ. P. 12(h)(1), and can be  addressed in a summary judgment motion.  E.g., Wayne v. Jarvis, 197 F.2d 1098, 1104-05 (11th Cir. 1999).  Accordingly, judgment will be entered in favor of Captain Weaver in his official capacity as to the claim in Count V.

## VI.

The Sheriff argues that the claims against him in his official capacity must fail because plaintiff has not identified any custom or policy which was the legal cause of her injuries.  (Doc. #83, pp. 9-12).  The Court agrees.

Under § 1983, a suit against the Sheriff in his official capacity is effectively a suit against the government entity he represents.  Cook, 402 F.3d at 1115.  Since a sheriff can not be held liable under theories of *respondeat superior* or vicarious liability, to succeed on a § 1983 claim plaintiff must establish that the Sheriff himself was deliberately indifferent.  Cook, 402 F.3d at 1115.  This means a sheriff may only be held liable when his or her "official policy" causes a constitutional violation.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  Plaintiff can establish the requisite "official policy" in one of two ways: (1) identifying an officially promulgated policy, or (2) identifying an unofficial custom or practice shown through the repeated acts of the final policymaker of the entity.  Grech v.

Clayton County, Ga, 335 F.3d 1326, 1320-30 (11th Cir. 2003).
Plaintiff must identify the policy or custom which caused her
injury so that liability will not be based upon an isolated
incident, McDowell v. Brown, 392 F.3d 1289, 1290 (11th Cir. 2004),
and the policy or custom must be the moving force of the
constitutional violation. Grech, 335 F.3d at 1330; see also Board
of County Commissioners v. Brown, 520 U.S. 397, 403 (1997); Gold v.
City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998). "A policy is
a decision that is officially adopted by the municipality, or
created by an official of such rank that he or she could be said to
be acting on behalf of the [entity]. . . . A custom is a practice
that is so settled and permanent that it takes on the force of
law." Cooper, 403 F.3d at 1221, quoting Sewell v. Town of Lake
Hamilton, 117 F.3d 488, 489 (11th Cir. 1997).

Plaintiff fails to identify any officially promulgated policy
which was the legal cause of her injury. The official policies
submitted by the Sheriff (Doc. #83-2) do not support a claim
against the Sheriff. Additionally, plaintiff has failed to
identify any custom or practice which was the legal cause of her
injury. Instead, plaintiff argues that this issue cannot be raised
on summary judgment, but only on a motion to dismiss or at trial.
(Doc. #96-1, pp. 7-8, 10). This is incorrect. Fed. R. Civ. P.
12(h). Indeed, this kind of issue is routinely resolved on a
summary judgment motion after development of the facts in
discovery. Since plaintiff has not established a policy or custom,

-17-

or that such a policy or custom was the legal cause of her injury, judgment must be entered in favor of the Sheriff on the claim against the Sheriff in his official capacity.

**VII.**

Captain Weaver also argues that the individual capacity claim against him should be denied because plaintiff failed to establish that he violated her Fourteenth Amendment rights and his conduct is protected by qualified immunity. (Doc. #83, pp. 12-16). The Court agrees.

Plaintiff first argues that defendant cannot raise this issue on summary judgment, but only in a motion to dismiss. (Doc. #96-2, p. 8). This issue is not one which must be brought in a motion to dismiss, Rule 12(h)(1), and therefore this argument is without merit.

To be eligible for qualified immunity, a defendant must first prove he was acting within the scope of his discretionary authority when the allegedly wrongful act occurred. Mercado, 407 F.3d 1152, 1156 (11th Cir. 2005); Wood v. Kesler, 323 F.3d 872, 877 (11th Cir. 2003). If this is shown, the burden shifts to plaintiff to show that qualified immunity is not appropriate. Mercado, 407 F.3d at 1156; Wood, 323 F.3d at 877.

The Court conducts a two-part inquiry to determine whether qualified immunity is appropriate. Harris, 406 F.3d at 1313-14; Garrett, 378 F.3d at 1278-79; Dahl v. Holley, 312 F.3d 1228, 1233 (11th Cir. 2003). First, the court determines whether the summary

-18-

judgment facts, viewed in a light most favorable to plaintiff, show that the officer's conduct violated a constitutional right. Brosseau, 125 S.Ct. at 598; Hope v. Pelzer, 536 U.S. 730 (2002); Saucier, 533 U.S. at 201. The second inquiry is whether, at the time of the violation, the constitutional right was clearly established in light of the specific context of the case, not simply as a broad proposition. Brosseau, 125 S.Ct. at 599-600; Dahl, 312 F.3d at 1233. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Brosseau, 125 S.Ct. at 599.

It is clear, and undisputed, that Captain Weaver was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. Therefore, the burden is upon plaintiff to establish that Captain Weaver is not entitled to qualified immunity.

The next issue is whether plaintiff's Fourteenth Amendment right to medical care was violated by Captain Weaver. Other than saying hello to Captain Weaver in the jail, plaintiff testified that she had no personal interaction with him regarding any of her medical concerns. (Doc. # Exhibit G, pp. 65-66). It is undisputed that  plaintiff's one and only correspondence notifying Captain Weaver of her situation was the request slip she gave to a nurse on November 28, 2001 at 6:46 p.m. Captain Weaver received the form on

November 29, 2001, promptly wrote that plaintiff's request could be arranged through the Medical department at her expense, and sent the form back to plaintiff.  Plaintiff was taken to the hospital on November 30, 2001, and did not receive the response until her return to jail.

Plaintiff does not suggest she was given inadequate medical care before November 19.  (Doc. #100-1, p. 5).  Giving plaintiff the benefit of any doubt, the record establishes that she had an objectively serious medical need from at least November 19, 2004, through December 3, 2004.  E.g., Cruz v. Publix Super Markets, Inc., ____ F.3d ____, *3 (11th Cir. October 31, 2005)(noting that being pregnant, as opposed to being incapacitated because of pregnancy, is not a "serious medical condition" within the meaning of the Family Medical Leave Act).

Captain Weaver had knowledge of plaintiff's concerns for less than twenty-four hours before she was taken to the hospital.  The jail medical staff, and an outpatient examination, did not confirm plaintiff's fears.  It is doubtful that Captain Weaver can be charged with subjective knowledge of a serious medical need.  In any event, Captain Weaver did not disregard a known risk, but responded that plaintiff could obtain the medical care she wanted at her expense.  While plaintiff argues that this was incorrect information[8], it does not establish a disregard of a known risk.

_____

[8]It is not at all clear that the information was wrong.  While
(continued...)

The Court finds that the record establishes that Captain Weaver was not deliberately indifferent to Ms. Goebert's condition under the circumstances.  At most, the conduct or omissions of Captain Weaver amounts to negligence, but does not amount to more than negligence.  Thus, the Court will grant defendant Weaver's Motion for Summary Judgment as to Count V in his individual capacity.

## VIII.

David F. Brown, M.D. ("Dr. Brown") argues that summary judgment is due to be granted in his favor because he did not show intentional disregard for Ms. Goebert's serious medical need and his medical decisions are presumed correct and should not be disturbed by the courts.  (Doc. #93-1).  Ms. Goebert argues that Dr. Brown was deliberately indifferent to her serious medical need.

First, there is no dispute that Dr. Brown as jail physician was a jail official.  Second, while Dr. Brown asserts that "Goebert's primary argument is that [he] should have sent her to an obstetrician sooner" and that "[s]hould haves are not grist for constitutional litigation" (Doc. #93-1,p.12), the Court finds that a reasonable jury could conclude that a lay person would recognize vaginal leaking in a 5-month pregnant woman is a serious medical need.  Further, as previously stated, the record establishes that plaintiff had an objectively serious medical need from at least

---

[8](...continued)
the relevant documents state that the Sheriff or EMSA/PHS are to provide all prenatal care, it is not required that an inmate be given the physician of her choice or outpatient treatment.

November 19, 2004, through December 3, 2004.   Moreover, as plaintiff points out, Dr. Brown stated in deposition that he treated pregnant females for "nonobstetric related problems" and would refer a pregnant female leaking amniotic fluid to an obstetrician.   (Doc. #100-2, p.2)[9].   The Court finds that a reasonable jury, considering all the evidence in the light most favorable to plaintiff, could find that Dr. Brown acted with an attitude of deliberate indifference to Ms. Goebert's serious medical need.   In sum, if plaintiff were not barred from bringing suit for failure to exhaust her administrative remedies under the PLRA her claim against Dr. Brown and PHS would survive summary judgment.

Accordingly, it is now

**ORDERED:**

1.   Plaintiff's Motion to Dismiss/Strike (Doc. #96-1) is **DENIED.**

2.   Defendants Prison Health Services, Inc., EMSA Correctional Care, Inc., and David F. Brown, M.D.'s Motion for Summary Judgment (Doc. #93-1) is **GRANTED,** and Counts I, III, and (the second) VI are dismissed without prejudice.[10]

---

[9]While the deposition of Dr. Brown is not in the record in its entirety, the Court is satisfied that the excerpts included in the record provide enough context to correctly assess his testimony.

[10]While defendants seek dismissal with prejudice, it is clear that the remedy for failing to exhaust administrative remedies
(continued...)

3.    Defendants  Mike  Scott  and  Thomas  Weaver's  Motion  for
Summary  Judgment  (Doc.  #83-1)#65)is  **GRANTED,**  and  Counts  IV  and  V
are  dismissed  without  prejudice.    Alternatively,  the  motion  is
**GRANTED**  and  judgment  shall  enter  in  favor  of  Mike  Scott  in  his
official  capacity  as  to  Count  IV  and  in  favor  of  Thomas  Weaver  in
his  official  and  individual  capacities  as  to  Count  V.

4.    All  counts  against  defendant  Rodney  Shoap  in  his
individual  capacity  are  dismissed  with  prejudice  pursuant  to  the
Order  (Doc.  #61)  filed  on  April  7,  2005.

5.    All  counts  against  defendant  Lee  County  Sheriff's  Office
are  dismissed  with  prejudice  pursuant  to  the  Order  (Doc.  #62)  filed
on  April  13,  2005.

6.    Count  II  is  dismissed  without  prejudice  as  to  Sandee
Malanoski,  R.N.

7.    The  Clerk  of  the  Court  shall  enter  judgment  accordingly,
terminate  any  other  pending  motions,  and  close  the  file.    The  Final
Pretrial  Conference  scheduled  for  Monday,  December  12,  2005,  is
**cancelled.**

**DONE AND ORDERED** at  Fort  Myers,  Florida,  this  __7th__  day  of
December,  2005.

JOHN E. STEELE
United States District Judge

---

[10](...continued)
under  the  PLRA  is  a  dismissal  without  prejudice.